IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHEILA M. SPENCER,

                         Appellant,

    v.

PNC BANK, N.A.

                         Appellee.

OPINION AND ORDER

14-cv-422-wmc

Debtor Sheila M. Spencer appeals from a judgment entered against her in the Bankruptcy Court for the Western District of Wisconsin, which granted appellee PNC Bank, N.A. motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1), and motion to dismiss Spencer's Chapter 13 case. For the reasons that follow, the court rejects Spencer's challenges to the bankruptcy court's decisions.

BACKGROUND

**A. Spencer's Note and Mortgage**

On July 29, 2005, Spencer borrowed $209,160 from FNMC, a division of National City Bank of Indiana. 2/25/15 Hearing Tr. (bankr. dkt. #110-1) 3; Mortgage (bankr. dkt. #91-2); 2/18/14 Hearing Tr. (bankr. dkt. #113) 38. That same day Spencer executed a Note. (Bankr. dkt. #91-1).[1]

---

[1] All citations to the "bankr. dkt." are to *In re Spencer*, No. 1-13-15076-cjf (Bankr. W.D. Wis.).

As the ultimate successor to the Note by virtue of merger, PNC produced the original Note at the Bankruptcy Court's February 18, 2014, hearing.[2]  The Note contains two endorsements: one from "National City Bank of Indiana" to "National City Mortgage Co." and then one by "National City Mortgage Co." in blank.  *Id.*  Spencer acknowledges her signature on the Note but challenges the validity of the endorsement in blank on the document produced by PNC.  PNC contends that it remained in possession of the original signed Note and mortgage.  A PNC official provided testimony at that hearing describing custodial arrangements and preservation of those original documents.

Spencer stopped making payments on her mortgage sometime in late 2008, meaning she has made *no* payments on her mortgage for more than six years.  2/18/14 Hearing Tr. (bankr. dkt. #113) 50-51, 57 (referring to Ex. 7), 154-155.[3]  In addition, Spencer failed to pay for property taxes and insurance on the property during this period.  As of September 13, 2013, PNC had expended over $33,000 in funds for taxes and insurance.  *Id.* at 59-60 (referring to Ex. 11).

---

[2] National City Bank of Indiana merged into National City Bank, which ultimately merged into PNC.  2/18/14 Hearing Tr. (bankr. dkt. #113) 34-39 (describing Exhibits 3-5 concerning the merger of these entities).  At the February 18, 2014, hearing, Spencer challenged the admission of these exhibits demonstrating the merger of PNC's predecessors ultimately into PNC as hearsay, but the bankruptcy court overruled the objections, finding that the documents fit within the exceptions of Federal Rule of Evidence 803.  (*Id.* at 39.)

[3] Spencer attempted to make a payment in December 2008, but that payment was rejected by PNC, because the amount received was insufficient to reinstate her loan from default.  2/18/14 Hearing Tr. (bankr. dkt. #113) 54.

**B.  PNC's Foreclosure Efforts and Spencer's Chapter 7 Petition**

On April 7, 2009, PNC's predecessors in interest filed a foreclosure action in Wood County Circuit Court.  *FNMA, a Div. of Nat'l City Bank of Ind. n/k/a Nat'l City Bank v. Spencer*, No. 2009CV000283 (Wood Cnty. Cir. Ct.); *see also* 2/18/14 Hearing Tr. (bankr. dkt. #113) Ex. 28.  On May 19, 2010, PNC filed an amended summons and complaint, identifying itself as the plaintiff.  *Id.*

On July 9, 2010, Spencer filed for bankruptcy under Chapter 7 of the bankruptcy code effectively staying the foreclosure action in Wood County.  *In re Spencer*, No. 1-10-15242 (Bankr. W.D. Wis. (dkt. #1)).  In her schedules in the Chapter 7 case, Spencer listed FNMC as a secured creditor with a mortgage on her home.  *Id.* (dkt. #12).  Having by that time merged with National City Bank, PNC sought and received an unopposed relief from the automatic stay on September 7, 2010.  *Id.* (dkt. #16); *see also* 2/18/14 Hearing Tr. (bankr. dkt. #113) Ex. 12.  Spencer received a discharge on October 14, 2010.  *In re Spencer*, No. 1-10-15242 (Bankr. W.D. Wis.) (dkt. #18).

Back in state court, the foreclosure judgment was vacated on June 21, 2011, and the litigation resumed.  2/18/14 Hearing Tr. (bankr. dkt. #113) Ex. 28; 6/21/11 State Court Order (bankr. dkt. #17-1).  On December 6, 2011, PNC filed its first motion for summary judgment, which was adjourned until April 5, 2012, allowing Spencer time to conduct discovery.  *Id.*  Around this time, Spencer's attorney in the bankruptcy proceedings, Wendy Alison Nora, entered an appearance in the state court action and proceeded to file numerous motions seeking, among other things, the disqualification of

the state court judge and an order striking PNC's notice of appearance.[4]   She also accused the Wood County Circuit Court of manipulating transcripts of hearings.  (*Id.*) In addition, Attorney Nora filed a motion for contempt against PNC and sought a restraining order in the bankruptcy court.  *In re Spencer*, No. 1-10-15242 (Bankr. W.D. Wis.) (dkt. ##21, 22).

On August 13, 2012, Spencer objected to PNC's prosecution of the state foreclosure action in its own name.  2/18/14 Hearing Tr. (bankr. dkt. #113) Ex. 28.  On December 21, 2012, the Wood County Circuit Court held that PNC could proceed as the plaintiff and real party in interest in that action.  *Id.*, Exs. 16, 26, 28.

On January 10, 2013, Spencer filed a motion in the bankruptcy court to reopen her now closed Chapter 7 case.  *In re Spencer*, No. 1-10-15242 (Bankr. W.D. Wis.) (dkt. #32).   The bankruptcy court denied the motion, as well as Spencer's motions for reconsideration, primarily because: (1) Spencer either raised or could have raised these arguments while the Chapter 7 proceeding was open; and (2) the challenges Spencer sought to raise involved issues of state law and the bankruptcy court was not the appropriate forum to resolve them.  *Id.* (dkt. ##37-38, 39, 40, 41, 42).   Spencer appealed the denial of her motion to reopen to this court, which affirmed.  *Id.* (dkt. ##43, 51).

Also on January 10, 2013, Spencer removed the foreclosure action from Wood County Circuit Court to this court on the basis that PNC did not have an interest in the

---

[4] The Seventh Circuit characterized these events as Nora "adopt[ing] object-to-everything litigation strategy and bur[ying] the state court in a blizzard of motions." *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 652 (7th Cir. 2014).

mortgage. *PNC Bank, N.A. v. Spencer*, No. 13-cv-21-bbc (W.D. Wis.). This court remanded the case back to Wood County on the basis that Spencer waited too long to remove the 2009 case; the court also noted that the state court is the appropriate forum for her dispute over the ownership of her mortgage. *Id.* (dkt. #12.) On May 23, 2013, this court denied Spencer's motion for reconsideration, awarding PNC its costs and fees. *Id.* (dkt. #22).[5] On appeal, the Seventh Circuit affirmed this court's award of attorney's fees and costs for an improper removal pursuant to 28 U.S.C. § 1447(c). *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 652 (7th Cir. 2014).[6]

Once again back in the state foreclosure action, the court granted PNC's motion to strike Spencer's counterclaims and set a hearing on PNC's motion for summary judgment for October 17, 2013. 2/18/14 Hearing Tr. (bankr. dkt. #113) Ex. 28.

## C. Current Bankruptcy Proceedings

On October 16, 2013, the day before the hearing on PNC's motion for summary judgment in the foreclosure action, Spencer filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code, which forms the subject of this

---

[5] Judge Crabb also denied a second motion for reconsideration and granted additional fees based on PNC's efforts defending against that motion. *PNC Bank, N.A. v. Spencer*, No. 13-cv-21-bbc (W.D. Wis.) (dkt. #27).

[6] In that same order, the court also required Nora to show cause why she should not be sanctioned for litigating a frivolous appeal. Recently, the Seventh Circuit imposed a sanction of $2,500, but suspended it "until such time, if ever, that Nora submits additional frivolous or needlessly antagonistic filings." *In re Nora*, No. 13-2676, 2015 WL 554396, at *1 (7th Cir. Feb. 11, 2015); *see also Rinaldi v. HSBC USA, N.A.*, Nos. 13–3865, 14–1887, 2015 WL 554602, at *3 (7th Cir. Feb. 11, 2015) (affirming $1000 sanction entered against Nora in a similar bankruptcy proceeding challenging the validity of a note for foreclosure purposes).

appeal. *In re Spencer*, No. 1-13-15076-cjf (Bankr. W.D. Wis.) (dkt. #1).  After receiving multiple extensions, Spencer filed her Chapter 13 Plan on November 20, 2013, and filed a First Amended Plan on December 1, 2013.  *Id.* (dkt. ##29, 38).  In conjunction with her original Chapter 13 Plan, Spencer listed $0 in Schedule D - Creditors Holding Secured Claims.  *Id.* (dkt. #28 at p.1).  PNC filed an objection to the confirmation of the plan, a motion to dismiss the case, and a motion for relief from stay.  *Id.* (dkt. ##41, 42, 46).  The Trustee also filed an objection to Spencer's repayment plan, noting that the Plan only provides for curing of default "if no mrtg."  *Id.* (dkt. #50 at p.2).  In response to these objections, Spencer again amended her Chapter 13 Plan, *id.* (dkt. #63), to which PNC and the Trustee reasserted its objections (dkt. ##67, 78).

In response to Spencer's varied machinations, the bankruptcy court held an evidentiary hearing on February 18, 2014.[7]  2/18/14 Hearing Tr. (bankr. dkt. #113).  PNC called Timothy Justice, its default litigation coordinator, to testify about Spencer's mortgage.  PNC also moved several exhibits into evidence, including the "original blue ink signed copies of the note and the mortgage."  *Id.* at 10, 14.  Spencer's counsel cross-examined Justice.  Finally, Spencer herself testified.

---

[7] The hearing was scheduled to begin at 10:00 a.m. but did not begin until close to noon because of Spencer and Nora's late arrival.  2/18/14 Hearing Tr. (bankr. dkt. #113) 5.)  In her oral opinion, Judge Furay found Spencer's explanation for the delay "unsatisfactory."  Accordingly, she awarded PNC sanctions in the amount of one hour of its attorney's fees.  2/25/14 Hearing Tr. (bankr. dkt. #110-1) 2.)  Spencer appeals that decision as well, but as PNC points out, the award was not reduced to a judgment. (Appellee's Opp'n (dkt. #14) 7 n.1.)  Moreover, PNC agrees to forego any claim to the one-hour fee so as to limit the issues on appeal.  (*Id.*)  As such, the court will not review this challenge, but the court finds no basis to fault Judge Furay's decision after reviewing the transcript of the hearing.

On February 25, 2014, the bankruptcy court conducted a telephonic hearing in which she read a decision into the record, granting PNC's motion for relief from stay and motion to dismiss.  2/15/14 Hearing Tr. (bankr. dkt. #110-1).  Final orders were entered the same day.  (Bankr. dkt. ##104, 105.)  Spencer's appeal followed.

## OPINION

Pursuant to 28 U.S.C. § 158(a), Spencer now appeals from the bankruptcy court's judgment on three bases:  (1) PNC lacks standing to seek relief from the automatic stay; (2) the bankruptcy court erred in granting PNC's request to lift the stay; and (3) the bankruptcy court erred in dismissing Spencer's Chapter 13 petition because of a lack of good faith.  The court's discussion below of each of these three challenges is relatively short because (1) the bankruptcy court's findings of fact are already described at length above and (2) reviewed deferentially for clear error.  *See In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007) (citing Fed. R. Bankr. P. 8013 and *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998)).  While that court's legal conclusions are reviewed de novo, the facts essentially compel affirmance.

## I.  Challenge to PNC's Standing

As far as the court can discern from Spencer's rambling brief, her argument challenging PNC's standing is based on its apparently undisclosed status as servicer of the note, while Freddie Mac is the entity that actually holds an interest in the note.  "The threshold for standing to seek relief from stay is that the moving creditor has a 'colorable

claim' to property of the estate." *In re Viterous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990); *see also In re Rinaldi*, 487 B.R. 516, 530 (Bankr. E.D. Wis. 2013) ("Having determined that HSBC is the holder of the Note, and that the holder is entitled to enforce the security of the Note, in this case, the Mortgage, it follows that HSBC has a colorable claim and may seek relief from the stay.").

As described above and as thoroughly explained by the bankruptcy court, PNC has made a prima facie showing that (1) the Note is a negotiable instrument pursuant to Wis. Stat. § 403.104(1); (2) PNC is in possession of the Note, and therefore is the "holder" of the Note under Wis. Stat. § 401.201(km); and (3) the Note is endorsed in blank, and therefore is payable to the bearer pursuant to Wis. Stat. § 403.25(2). Regardless of its status as the "servicer" and Freddie Mac as the "owner" of the Note, the fact is that PNC is the holder of the Note and may enforce it as set forth in Wis. Stat. § 403.301, which provides in pertinent part:

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 or 403.418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

*See also Dow Family LLC v. PHH Mortgage Corp.*, 2013 WI App 114, ¶ 23 n.9, 350 Wis. 2d 411, 438 N.W.2d 119, *aff'd* 2014 WI 56 ("[E]ven if Fannie Mae actually owns the note, PHH would still be entitled to enforce the note if it were in possession of the note and if the note were endorsed in blank." (citing Wis. Stat. §§ 403.205(2), 403.301)).

Of course, Spencer remains free to raise in state court her challenges to the veracity of the endorsement in blank, or any other challenges relating to the validity of the Note, but those arguments do not undermine PNC's standing in the bankruptcy proceeding. Moreover, the court finds no error in Judge Furay's finding of standing.

## II. Lifting of Stay

The bankruptcy code provides for an automatic stay of (1) the commencement or continuation of a judicial action, (2) any act to obtain possession of property, or (3) any act to enforce any lien against property, among other actions. 11 U.S.C. § 362(a). Subsection (d)(1), however, provides that the bankruptcy court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The Seventh Circuit's decision in *In re Fernstrom Storage & Van Company*, 938 F.2d 731 (7th Cir. 1991), defined the following three-factor test to determine whether "cause" exists to lift the automatic stay:

> (1) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> (2) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor; and
>
> (3) the creditor has a probability of prevailing on the merits.

*Id.* at 735 (citation omitted).

The bankruptcy court found that all three of these factors weighed in favor of lifting the stay against PNC. This court agrees. First, the bankruptcy court appropriately found no prejudice to Spencer in lifting the stay. As previously determined by the

bankruptcy court and by this court, the proper forum for resolving issues concerning PNC's right to foreclose on the mortgage is best decided in the state court foreclosure action.   Second, as evidenced by the lengthy description above of PNC's efforts to foreclose, any additional delay in the foreclosure action will necessarily to prejudice PNC, especially in light of Spencer's failure to make *any* payments over the last six years and PNC's continued payment of insurance and taxes on the subject property.  This hardship on PNC strongly outweighs any potential hardship on Spencer in having to defend against the foreclosure action in state court.   Finally, the court also agrees with the bankruptcy court's determination that PNC is likely to succeed on the merits.   As described above, PNC's evidence that it is the holder of the Note, coupled with the undisputed evidence that Spencer is in default on her mortgage, forms a sound basis for PNC's foreclosure action.

## III.  Dismissing of Chapter 13 Claim

Spencer also challenges the bankruptcy court's dismissal of her Chapter 13 claim. While the bankruptcy court cited 11 U.S.C. § 1307(c)(1), which permits dismissal "for cause," including "unreasonable delay by the debtor that is prejudicial to creditors," the court appears to have primarily relied on a finding of lack of good faith on the part of Spencer in filing her Chapter 13 petition to dismiss her claim.  (2/25/14 Tr. (bankr. dkt. #110-1) 18 (citing *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) ("The finding of a lack of good faith in filing the petition under Section 1307(c) can lead to the dismissal and termination of the bankruptcy proceedings[.]")).)

The Seventh Circuit instructs that a good faith determination is a "fact intensive inquiry to be determined by looking at the totality of the circumstances" and sets forth certain factors for bankruptcy courts to consider. *Love*, 957 F.3d at 1355, 1357.   In reviewing the nonexhaustive list of factors, certain of them provide ample support -- even standing alone -- for dismissing Spencer's Chapter 13 petition for lack of good faith. First, the court considers "the nature of the debt, including the question of whether the debt would be nondischargeable in Chapter 7 proceeding." *Id.* at 1357.   This factor weighs strongly in favor of finding a lack of good faith on the part of Spencer.   As detailed in Judge Furay's lengthy opinion, Spencer has few debts to reorganize, thus calling into question why she would pursue bankruptcy at all, other than for the purpose of delaying the foreclosure action.   Moreover, Spencer received a Chapter 7 discharge within four years of her Chapter 13 petition date, and therefore is not eligible for a Chapter 13 discharge, nor is she eligible for another Chapter 7 discharge.   11 U.S.C. §§ 1328(f), 727(a)(8).

Next, *Love* instructs bankruptcy courts to consider "the timing of the petition" and "the debtor's motive in filing the petition."   957 F.2d at 1357.   The blatantly suspicious timing of the filing of the Chapter 13 petition -- the day before PNC's hearing on its motion for summary judgment, which itself had been delayed several months to provide Spencer an opportunity for discovery -- further supports a finding of lack of good faith. Indeed, Spencer admitted at the February 18, 2014, hearing that she filed the Chapter 13 petition in an attempt to delay the foreclosure action.   2/18/14 Hearing Tr. (bankr.

dkt. #113) 174 (reviewing testimony at the 341 hearing in which Spencer stated that she filed the Chapter 13 petition to stop PNC from "stealing [her] home").

Two additional factors that weigh in favor of finding a lack of good faith are "how the debtor's actions affected creditors," and "the debtor's treatment of creditors both before and after the petition was filed." *Love*, 957 F.2d at 1357. As described above, Spencer has made *no* payments on her mortgage since 2008, nor has she escrowed funds to make delinquent payments to whatever entity she believes is the true holder of the note and mortgage. At the same time, PNC has made significant payments on property taxes and insurance and has spent years in four courts attempting to foreclose on Spencer's mortgage.

Finally, courts may consider "whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Love*, 957 F.3d at 1357. Here, the bankruptcy court pointed primarily to Spencer's failure to schedule PNC's disputed claim. 2/25/14 Hearing Tr. (dkt. #110-1) 24. In her brief to this court, Spencer argues that because PNC Bank was listed as a party to receive notice of the proceedings, it was not prejudiced by her lack of scheduling PNC's claim. But Spencer's argument fails to appreciate and respond to the bankruptcy court's concern. The criticism is not that PNC lacked notice and therefore was prejudiced; rather, the criticism is that Spencer failed to acknowledge this secured debt -- even if she disputes PNC's right to foreclose on it. On this point, the court entirely agrees with the bankruptcy court. While not the sole support for the court's finding by any means, this factor certainly supports that court's finding of lack of good faith.

On the appellate record as a whole, this court finds no error (clear or otherwise) in the bankruptcy court's findings of facts. The court further finds that the totality of circumstances strongly supports the conclusion that PNC met its burden of demonstrating Spencer's lack of good faith. *Love*, 957 F.3d at 1355 (burden on party moving for dismissal to demonstrate lack of good faith). In the end, therefore, the court upholds the bankruptcy court's finding that Spencer's "filing is a blatant abuse of the bankruptcy process." 2/25/14 Hearing Tr. (bankr. dkt. #110-1) 20.

ORDER

IT IS ORDERED that the bankruptcy court's orders are AFFIRMED.

Entered this 1st day of April, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

13